310-0688 Midland Plaza, Appalachia, Janet Times-Meyer v. Lewis Little, Callan James Lawson May I proceed? Yes. May it please the Court? Counsel? My name is Jim Lawson and I am here on behalf of Lewis Little, who is the owner of certain real estate that is situated underneath a shopping center in Keewanee. And the plaintiff, Midland Plaza, is the part owner of the buildings that are situated on top of the real estate. And Midland is also the lessee under a 1970 land lease that included a purchase option of the underlying real estate that Mr. Little owns. That initial purchase option was granted in 1970 as part of the original lease. Moving forward to 1997, specifically April 1, 1997, the parties executed a fourth amendment to that 1970 land lease that canceled the original 1970 purchase option and instituted a new purchase option, which I'll refer to as the 1997 purchase option. The 1997 purchase option is materially different than the 1970 purchase option, both in terms of price, time of exercise, and also geographic scope of the 1970 option. All was well at that point until we get to 2001. The parties executed another fourth amendment to the 1970 land lease, and that is our first big red flag in this case, is that the parties had executed numerical sequential amendments over the course of decades to this 1970 lease, first, second, third, and fourth, and they execute a second fourth amendment in 2001. The 2001 amendment, which I'll refer to as the 2001 fourth amendment, had a singular purpose, according to the recitals, and that was to extend the lease term. But there is a third paragraph in that brief amendment which has caused a controversy in this case. This case should be resolved based upon the clear state of Illinois law regarding specific performance of contract language. In order for specific performance to be granted, the contract language sought to be enforced, Midland Plaza must prove that it has a higher degree of clarity than other contract remedies under Illinois law. So the contract language sought to be enforced has to be clear, unequivocal, unambiguous, and it must possess a higher degree of clarity. And that is Midland Plaza's burden of proof. We turn to the operative language in the 2001 fourth amendment, and that operative language that forms the controversy in this case is the well-established phrase, remain in full force and effect. If you look at paragraph three of the 2001 fourth amendment, after the lease term was modified, it states that all other provisions of the 1970 land lease remain in full force and effect. I may be paraphrasing a little bit there, but it includes an example. It states including but not limited to the lessee's right to purchase the property for the price stated in paragraph eight of the 1970 land lease. That logic dictates that when you apply that provision, you go back to paragraph eight of the 1970 land lease, and you track that paragraph over the course of time to see how it is amended, and whatever is in effect at the time that the parties used the language, remain in full force and effect, does exactly that. It remains in full force and effect. There's no implication there that anything was supposed to be changed. And there we get to the first substantive argument, or the first hurdle, if you will, that Midland Plaza bears in this case on this de novo review, and that is Midland Plaza has to convince this court that the well-established phrase, remain in full force and effect, has to mean one of two diametrically opposed meanings. With respect to the 1970 purchase option, Midland Plaza has to convince this court that the well-established phrase, remain in full force and effect, actually means reinstated. On the exact opposite end of the spectrum, it has to convince this court that that same phrase, remain in full force and effect, means rescind or revoke with respect to the 1997 Fourth Amendment. Now, the well-established phrase, remain in full force and effect, cannot mean two completely different things, reinstate and revoke. And quite frankly, it means neither of those. Remain in full force and effect means exactly that, to remain unchanged. I looked in Illinois law to see if I could find a case that actually defines the phrase, remain in full force and effect, and quite frankly, I couldn't find one. I think the reason for that is it has a common sense meaning it's very well established. To remain in full force and effect means whatever was in effect on the date that that language was used, in this case 2001, whatever was in effect on that date remains in full force and effect. There's no change intended. The interpretation... So you're saying there's no change in the 2001 modification? Correct. The 2001 Fourth Amendment did not change the purchase option that was in effect on that particular date. So in other words, you're saying it reinstated the 1997 or continued... I'm saying that it made no change whatsoever, that it says that all provisions of the 1970 land lease remain in full force and effect, and it used an example and made a reference to the purchase option, and it did say the price in paragraph 8 of the 1970 land lease, but under the rules of contract construction, when you look at the contract as a whole, you don't ignore all of the lease documents and just look at the original lease document. You look at the lease as a whole, the original contract, and all of the amendments. Well, you know, and something not discussed in the briefs about modification law, I mean, each one of these changes were modifications of the contract, were they not? Isn't there a whole body of law dealing with modifications, contract modification? Yes, there is. And I think with respect to modifications, much of the same contract law applies, and that is it has to be clear, it has to be bargained for, and it has to be expressed and clear in ambiguous language to be specifically enforced. And in this particular case, you still, regardless if you're looking at modification law for specific performance, you get back to looking at the actual language and asking, what does it mean? And regardless if it is the original language or modified language, however you want to look at it for specific performance, it has to possess a higher degree of clarity. And in this case, Midland Plaza, quite frankly, has admitted explicitly that this entire situation could simply be the result of a mistake. It flat-out admitted that at the trial level, even though it admits that this entire situation with two different competing Fourth Amendments, which it admits are in direct conflict, even though these two amendments are in direct conflict, and even though this entire situation may be the result of just a simple mistake by the parties, we don't know. We want specific performance. So regardless of which rules of contract construction we look at, the rules of specific performance with a higher degree of clarity, I do not believe Illinois law would allow specific performance. And again, looking at the... This is the deal with the purchase of land. Yes, a purchase option for the purchase of land. Mr. Lawson, is there any significance to the fact that when all of the documents that had gone before were recited in the 2001 Fourth Amendment, they did not even mention the existence of the 1997 Fourth Amendment? I think it is significant, Your Honor, to the extent that it significantly adds to the confusion in this case because we do not know why it was not mentioned. Is that further evidence of mistake? I don't know what it is, Your Honor. It could very well, except we also need to take into account that with respect to the 1997 Fourth Amendment, there's been some argument that it was written out of existence because it wasn't referred to in the recitals of the 2001 Fourth Amendment. However, the parties to this day are still operating under all of the other provisions of the 1997 Fourth Amendment because the 1997 Fourth Amendment adjusted various things, including rent, which is in effect even today, well after 2001. So the fact that it wasn't recited in the recitals of the 2001 Fourth Amendment, I think it's a good indication that there was confusion between the parties, that there is a mistake between the parties. I believe different counsel was involved over the course of the many different years, but that all leads to the same conclusion. Isn't what you're saying inconsistent with modification law? I mean, isn't it the case that if a modification, and we've got the 2001 modification, if the phrase is, if there's something in that modification that's inconsistent with a term from a prior contract, okay, between the same parties, the modification is interpreted as including an agreement to rescind the inconsistent term in the prior contract. Isn't that correct? Isn't that what the law is in Illinois? That is the law in Illinois when it comes to modifications. However, I don't believe that that applies in this case because you have to look at the phrase as a whole, and the phrase is all provisions of the 19th Century Land Lease remain in full force and effect. There was no stated intent to make any modification whatsoever. And if we look at the recitals to the 2001 Fourth Amendment, it states that the purpose of the amendment was to simply extend the lease term. There was no expressed intent to actually change any purchase option whatsoever, and with respect to the purchase option and all of the provisions, it said whatever exists is going to remain in full force and effect beyond this date, and then they used an example of the purchase option. I don't believe that you can use language saying everything is going to remain unchanged and we're going to give you an example of what is in complete contrast to that language. That I don't think is a modification. So I don't believe that modification law applies to the 2001 Fourth Amendment when it comes to anything other than the extension of the lease term that was actually negotiated and clearly expressed by the parties. But when it comes to everything that they said was going to remain in full force and effect, that means to remain unchanged. There's no expressed intent to make a change there at all. What's the difference in the law between an amendment and a modification contract? I don't believe that there is a significant distinction. I think what is important is the specifics of what is being amended or what is being modified, and that's where we get to even examine just the recitals, even though there are non-binding recitals in any contract. It is an expression of the intent of the parties. Was there any intent to modify the purchase option? I don't think that there was any intent to modify a purchase option or else they would have actually stated that and done that. If you look at the 1997 Fourth Amendment, they actually included an entire section of that 1997 Fourth Amendment and put in all capital letters, bold print and underlined heading to that section, adjustment to purchase option, and it included about a page or a page and a half of an actual modification. They knew how to do it. But when you look at the 2001 Fourth Amendment, that language, was there an intent to modify a purchase option? It is Mr. Little's position, absolutely not. How is it that the 1970 modification said that Middleton would have an option to purchase as set forth in the 1970 lease agreement? How do you read that, saying that it didn't do anything? I read it as the contract as a whole, that the paragraph 8 of the 1970 land lease continues in existence. It continued in one fashion up to 1997, and it continues in a different fashion after 1997. But it is still paragraph 8 of the 1970 land lease. The provisions of it simply changed in 1997. But how is the 1997 still valid when it's inconsistent with the 2001 under modification law? Because I do not believe any change was made. That's the essence of our position here, is that when you look at the language of paragraph 3 of the 2001 Fourth Amendment, paragraph 3, I do not believe any modification occurred. You're treating it, when it's said that it's, they have, you look at the, in the 2001 amendment, they call it the Fourth Amendment, okay, that they refer to the 1970. They refer to the 1970 land lease, which still exists to this very day, in paragraph 8. But they refer to the 1970 version, not to the 1997. 1997 is not even talked about. I don't think that that distinction is really what was intended by that paragraph, because paragraph 8 of the 1970 land lease exists, regardless of which document you're talking about, it is part of the lease as a whole. That in 1997, paragraph 8 was simply that the provisions were changed, but it is still paragraph 8. If I understand your argument correctly, you're saying that when it refers in 2001 to the 1970 purchase agreement, okay, you're reading the 1997 purchase agreement into the 1970, aren't you? I'm saying it is all part of the same 1970 land lease and the same purchase option that was modified. So although there are two different purchase options, it is one took the place of the other, but they are still both paragraph 8 of the 1970 land lease. But isn't that inconsistent with modification law that says when you have a modification, it's interpreted as including an agreement to rescind the inconsistent term of a prior contract. The prior contract was the 1997 amendment. That's not referred to. But the phrase is inconsistent with the 1997 language when it refers to a 1970 language, is it not? If you simply look at the 1997 and 1970 numerical years, I can see where you would think that, Your Honor, but when you look at it in terms of looking at the contract as a whole under the traditional rules of contract instruction, I don't think that you can look at the 1997 as a separate contract or a separate purchase option. It's all part of the 1970 land lease. And when the reference was made in 2001 to paragraph 8 of the 1970 land lease, that was referring to the land lease at paragraph 8 as modified from time to time. It is all paragraph 8. I mean, as I see it, what you're saying is that in 2001 when they said look to the 1970 purchase agreement, what you see in using your lens is the 1997 agreement. Yes, Your Honor. I phrased it a little bit differently as it is all one continuous lease agreement, one continuous purchase option, the content of which simply changed from time to time. Then why didn't they say 1997 in the 2001? That is one of the mysteries in this case, Your Honor, and that actually goes against Midland Plaza significantly because it is their burden to prove a higher degree of clarity in the contract language. What's inconsistent with the phrase 1970 and 1997? I think that the operative language, Your Honor, is remain in full force and effect. They simply gave an example of paragraph 8, but remain in full force and effect implies nothing is being modified in this paragraph. And I think that's the operative thing there is that no intention to modify any purchase option was intended in 2001, or else they would not have said it remains in full force and effect because remain in full force and effect does not mean reinstate, it doesn't mean rescind, it doesn't mean modify. It means remain unchanged. The only thing that existed on October 1, 2001, was the 1997 Fourth Amendment version of the purchase option. That is the only thing that could have remained unchanged. Mr. Lawson, just one quick question. My understanding is that you are appealing from summary judgment in favor of Midland and that your essential point is there is an ambiguity that creates a material factional dispute that precludes summary judgment. Is that right? Are you arguing that summary judgment should be granted for you? I think that it's one and the same, Your Honor, because with summary judgment being granted, if summary judgment is denied in favor of Midland Plaza, then it means that the contract terms ought to be enforced, the purchase option, whatever it is, is not clear, is not unambiguous, and therefore cannot be specifically enforced. Since that is what Midland Plaza is seeking, then if summary judgment is reversed in favor of Midland Plaza, then I do not believe that no declaration could ever be made that any purchase option is specifically enforceable. It means that this is too much of a mess and that either no purchase option exists because nothing is clear enough to be specifically enforced, and that's the only relief that they seek, or you look to the only purchase option that is remotely clear in terms of remaining in full force and effect, and that would be the 1997 purchase option. Well, what we typically do with summary judgments is if we find there is a material factual dispute, we would remand it to the trial court for a trial or a fact to make the determinations that you're arguing. Certainly one option, Your Honor. Absolutely. Okay. And that's what you're seeking? I'm seeking reversal of the summary judgment. So I believe that the court does have the power to enter any order that the trial court could have entered, and my reading of the specific performance law, since that is the only relief requested by Midland Plaza, is a declaration that there is no purchase option that is clear enough to be enforced. So in the alternative, Your Honor. I do have other remarks. May I just save those for rebuttal, or would you like me to save them? Thank you. Thank you. Counsel? Thank you, Your Honor. May it please the Court? Counsel? My name is Johnnie Keeneyer. I'm from the law firm of Elias, McGinnis, Riffel, and Szigeti, and with me today is Lane Alster, also from Elias' firm. We represent Midland Plaza, LLC, which over the past 41 years has developed, managed, and maintained a shopping center on behalf of its two members, the late Bob Cohen and Mr. Little, on this property that's at issue today. Now, there are eight operative documents the way that we see it. There's two leases and six amendments, and that is the universe of relevant material for this Court to consider on this ruling. I'm going to dive right in because the Court is clearly familiar with the general arguments in our brief and address just some of the specific points that were raised by counsel. He has referred to the reference to the paragraph 8 in the 1970 lease agreement that's made in the 2001, the final amendment, as being merely an example that this remains in full force in effect and as an example citing to, quote, the provisions relating to the lessee's option to purchase the property for the price stated in paragraph 8 of the January 12, 1970 land lease agreement. Well, I would draw the Court's attention to the amendment to the 1982 lease agreement. Now, the property under the 1982 and the 1970 lease agreements are both subject to the purchase option, whatever purchase option is in effect. The 1982 lease amendment, which was also executed contemporaneously with the 2001 Fourth Amendment, so both things occurred simultaneously on October 1st of 2001, states the parties include the property subject to the February 1, 2000, I'm sorry, February 1, 1982 land lease agreement in the option to purchase granted in said paragraph 8 of the January 12, 1970 land lease agreement, such that the lessee under both land lease agreements shall have the option to purchase all but not less than all of the property subject to both land lease agreements for the price stated in the January 12, 1970 land lease agreement. This is not a mere reference or example. This very clearly says, demonstrates the intent of the parties as they sat at the table in 2001. What about the 1997 amendment? Frankly, Your Honor, at this late date, we cannot determine with specificity what the background intention of the parties was. We don't know why they didn't list it in the 2001. You don't deny its existence. Pardon? You don't deny its existence. No, no, no. It was, to the best of our knowledge, and we're not contesting the fact that it was validly executed in 1997, and that it was presumably enforceable during some period of time. But the fact remains that the very last time that Midland Plaza, LLC, and Lou Little sat down together to decide how their relationship would go forward was in 2001, October 1st. And when they stood up from that table, it is absolutely clear that their intention was that the purchase option as set forth in the 1970 land lease agreement would govern the ongoing relationship between them. Okay. In the 1997 Fourth Amendment, they specifically canceled paragraph 8 and said that there's going to be a new option agreement and a new purchase price. Don't they have to uncancel that? No, Your Honor, and actually I'd cite to the case law that was referenced by Justice Carter a moment ago. Because the last meeting of the minds occurred in 2001, and because the documents that were executed in 2001 are clearly inconsistent with an application of the 1997 Fourth Amendment, that 2001 understanding has to control. And so by inference, it cancels anything that goes before that is inconsistent with it. Because the fundamental, the primary objective in constructing a contract is to give effect to the intent of the parties, the intent of the parties in 2001 is manifestly clear on the face of the documents that were executed that day. I know Counsel, in his reply brief, had protested our reference to the amendment to the 1982 lease that was executed at the same time as the 2001 Fourth Amendment of the 1970 land lease, saying that we were referring to extrinsic evidence. And I would just reference the Court to this Court's decision two years ago in the International Supply v. Campbell case, where the Court noted that because documents were executed simultaneously and as part of the same agreement and meeting of the minds, they can be and should be interpreted together. Well, those two documents were executed at the same time, and whatever specificity Counsel might affirm, assert that the 2001 Fourth Amendment lacks, the amendment to the 1982 lease essentially provides. It could not be clearer in that amendment to the 1982 lease that the intention of the parties, when they stood up from the table on October 1st of 2001, was that the option as stated in the 1970 land lease agreement would prevail between the parties, and that all the property subject to both the leases would be subject to that purchase option. Isn't your argument undercut by the fact that they didn't reference the 1997 Fourth Amendment? No, Your Honor, I don't believe it is, and here's why. For whatever reason, they decided that they were not going to utilize the 1997 agreement. But they didn't even recite it as one of the operative documents in the case. You don't deny that that's an operative document? I do not deny that that's an operative document. So they didn't put it in there. So if they're making their decision based on the documents that are before them, and they haven't included that one, it seems to me that that undercuts your meeting of the minds argument. Your Honor, I understand what you're saying, and it's our belief that based on the law of contract modification and amendment, that the last meeting of the minds, the final intention of the parties, has got to control over any previous understanding. Just as in a contract, each subsequent amendment is going to take precedence over and control on any conflicting term from anything that happened before. Now, if the question is, was there a mutual mistake of fact or law, which is really, I think, what Your Honor's question is geared toward, is was there a mistake? Did they intend to make this change? I can't speak to that, and really nobody can at this point. One of the two people who was at the table has passed away. We don't have the capacity to make that determination at this point. It's been 10 years. Did anybody file an affirmative defense mistake? I don't believe so. I cannot speak to that. Mr. Cohen died in 2009 during the pendency of the lawsuit. So he was still living when we filed this originally, and Mr. Cohen, the estate was substituted in. The fact remains, Your Honor, that clearly the intent of the parties in 2001 was that there's this purchase option, which I think, as they said in Bond v. War, a contract is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof under proper rules of construction and applicable rules of equity to ascertain what the parties have agreed to. And in 2001, October 1st, the parties agreed that all the property subject to the 1970 and the 1982 land lease agreements would be subject to the purchase option as stated in paragraph 8 of the 1970 land lease agreement. The fact that they previously had decided something else is not, we believe, relevant to the court's consideration at this point because they changed their minds. We don't know why they changed their minds. We cannot go back and address that. All we know is that the latest and greatest meeting of the minds was that this piece of property would be subject to purchase for a specific price at a specific time. But they said that the purchase price remains in effect, and it didn't remain in effect because it had been canceled. Your Honor, I agree that there is an inconsistency, obviously, between the 1997 documents and the 2001 documents. That's undeniable. They cannot, because of that, we look to the later in time. We have to look to the later in time. It's the last meeting of minds between these parties. And I think that the question of the use of the term remains in full sports and effect. Well, did they really mean the $377,000 as set forth in paragraph 8 of the 1970 agreement? If there's any question about that, that question is answered by the First Amendment to the 1982 lease agreement that was executed simultaneously, which goes into some detail about which properties will be subject, and these two together, and the lessee can trigger this option, and so on. It's clear, I think, from looking at these two documents together, frankly, I think it's clear from just looking at the 2001 Fourth Amendment, that the intention of Mr. Cohen and Mr. Little when they sat at the table on October 1st of 2001 was that the entirety of the property under both the 1970 and 1982 leases would be subject to this purchase option. They did not specifically rescind the 1970, I'm sorry, 1997 Fourth Amendment. That is true. However, the last meeting of the minds was that the 1970 purchase option would control. That intention, that expressed intention, is inconsistent with also enforcing the 1997 Fourth Amendment purchase option, and therefore that 1997 purchase option was nullified in 2001. And that's really our position, Your Honor, unless the Court has any other specific questions. With regard to the pleading in this matter, Yes. Little never disputes the final modification, the 2001. He doesn't dispute the modification. There was no petition or complaint for rescission or for a reformation or anything like that, was there, of the 2001? Not to my knowledge. I don't recall. I'm talking about the pleadings. Was there anything like that? Not that I'm aware of, no. Alleging mutual mistake, any of the contract offenses? Rescission has not been sought. Reformation of that has not been sought. I think there were some. There's actually, and this is why I hesitate, Your Honor, I think there was a mistake allegation as to one of the earlier documents made, but not as to the 2001. I'm talking about the 2001. Yeah. I don't believe that there was any request for rescission relating to that. And I'm sure Mr. Lawson can address that more fully and more comprehensively than I can. Little doesn't contest the fact that there was this amendment or modification at just the meeting. That's correct. Are there any further questions from the panel? Thank you. Thank you. That's correct, isn't it? There was no pleading or saying that to rescind or to reform the 2001 amendment or. That is correct, Your Honor. And the reason for that is just because the parties disagree on the meeting, I don't think that it would require a petition for rescission or reformation. I think that Mr. Little's position is there was no modification. We think that the language supports that. So I don't think a reformation would be necessary for a rescission. I think the language is what it is. The way Mr. Little interpreted it in 2001, the way that the language reads, is no change was intended. That is consistent with his position. Therefore, no reformation or rescission. It's just a competing contest over meeting. Right. I mean, you agree a mutual mistake would be a affirmative defense that would have to be to the contract itself. Isn't that correct? Yes. Under Illinois law. Yes. Your Honor, my initial rebuttal here is we have a clear statement by Midland Plaza that the 1997 Fourth Amendment and the 2001 Fourth Amendment are undeniably in conflict. Arguably, that's where this case should end in terms of the granting of specific performance because that admission in and of itself says there is not clarity in the contract language sought to be enforced. If they're a direct, undeniable conflict, they're not clear enough for specific performance. It is a different burden than just contract enforcement. This is a higher degree of clarity. I'll also remind the Court that at the trial level, Midland Plaza also admitted that ambiguities exist. Now, those ambiguities were not specified by Midland Plaza, and Midland Plaza said that they were from other sources, but there are no other sources. This case was decided on the contract documents, and that was it. There are no other sources. So we have an admission by Midland Plaza that the two amendments are irreconcilable, they're in conflict, that ambiguities exist, and the big admission, this entire case could simply be the result of a mistake. With an admission like that, whether we get to modification law or rules of contract construction, all of that, quite frankly, might take us a back seat to the simple law with respect to specific performance, as we need a higher degree of clarity. I'm going back to a question I asked you earlier. You're saying and you're arguing that the 1997 modification is inconsistent with the 2001 modification. Isn't that correct? I'm simply restating Midland Plaza's argument that I do not believe that the 1997 Fourth Amendment is inconsistent with the 2001 Fourth Amendment based upon the language remaining in full force and effect. I think that the only thing that was in effect in 2001, when that 2001 Fourth Amendment was enacted, does exactly that, remain in full force and effect. We're looking at this phrase, are we not, that all the terms and conditions of the January 12, 1970 land lease agreement shall remain in full force and effect, including, but not limited to, the provisions relating to the lessee's option to purchase property for the price stated in paragraph 8 of the January 12, 1970 land lease agreement. That's the exact language, isn't it? That is correct, Your Honor, and my position is that the 1997 Fourth Amendment is absolutely part of the January 12, 1970 land lease. So when you go to paragraph 8 in the example that's provided in that recitation, you go to paragraph 8 and you simply don't ignore what's happened over the course of time and how the contract itself, the 1970 land lease, has been modified from time to time. So when you look at the language to purchase the property for the price stated in paragraph 8 of the January 12, 1970 land lease agreement, you're reading the 1997 land lease agreement. That's the way you read it. No, Your Honor, I don't think that would be a correct phrasing because the 1997, it isn't a 1997 agreement. It is a 1997 amendment to the 1970 land lease. It's all part of the one land lease agreement. Is the law changed with regard to the provisions that a modification of a contract is interpreted as including an agreement to rescind any inconsistent terms in the prior contract? No, that has absolutely not changed, Your Honor, and if the parties would have indeed used language modifying the 2001 document, then you would be 100% correct and the 2001 document would control. But it is our position that there was absolutely no modification to anything of the 1970 land lease in the 2001 document except for the lease term. That was the only thing that was modified or else the parties would not have used the phrase,  If you take that argument one step further, Your Honor, literally all prior amendments that the parties had enacted over the years would also vanish and everything would revert back to the original January 12, 1970 lease, which would be utter nonsense and complete chaos. Counsel, explain that. I would just like to remind the court that I think one of the initial trial judge in this case, Judge Hamer, ruled on a motion for judgment on the pleadings, and he stated that this case was a train wreck and hoped that neither one of the attorneys involved, actually what he said is that whoever drafted these documents should put the malpractice carrier on notice, and both myself and opposing counsel said not us, which was very fortuitous, at least for us. But these documents are not clear. It is a mess. We have two Fourth Amendments that are in irreconcilable conflict. I respect the court's inquiries regarding modification, but I don't think a modification was intended or expressed in the 2001 Fourth Amendment or else they would not have used the change but that the language remain in full force and effect. What is there left to explore if we find this ambiguous? There's two options. Factually. Excuse me? Factually. Factually, we really get to the intent. We get out of summary judgment territory. If we get out of summary judgment territory and we're looking at facts, quite frankly, it's a very interesting situation because of the passing of Mr. Cohen. We would presumably investigate what in the world happened in 2001 where the 1997 Fourth Amendment was not even referred to and a conflicting amendment according to Midland-Falsa was enacted. It would certainly be the facts that we would present as there is no conflict. Everything was supposed to remain in full force and effect except the modification of the lease term. So would there be additional facts? From Mr. Little's perspective, I don't think so. Mr. Little is going to say that's my interpretation of the 2001 document and that's the facts. In terms of whatever facts Midland-Falsa might try and present, they certainly won't be presenting it for Mr. Cohen, unfortunately, but I don't think there's going to be any more facts. The lease documents are what they are. But, again, if we even get to facts, Your Honor, then in my opinion that means that the contract language is ambiguous because the only reason we would have to get to extraneous facts and circumstances or testimony is if the words on the pieces of paper need explained because they're ambiguous. If that's the case, the doctrine of specific performance does not apply because it only applies if the contract terms are completely unequivocal and free from doubt based upon a higher degree of clarity. That doesn't exist in this case. There are big questions in this case on both sides. There are questions about the modification law. There are questions about why the Fourth of Nineteen Ninety-Seven Fourth Amendment was— Which questions about modification law? Not questions about it, but just how it applies in terms of the last meeting of the minds and rescinding just your reference to the modification law in terms of the last modification rescinding anything that's inconsistent. Counsel's time. I don't think that that really applies, Your Honor, but this case is a train wreck. Thank you. Thank you, Counsel, for your arguments. We will take this case under advisement and go with dispatch. We'll take a panel break now for change of panel members. Thank you.